Hillsborough
No. 90-294

PAMELA A. MAJOR

v.

ACORN INVESTMENT COMPANY, INC.

March 27, 1991

*Nixon, Hall and Hess P.A.*, of Manchester (*Frank E. Kenison* on the brief and orally), for the plaintiff.

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*Philip G. Peters* and *Robert E. Murphy, Jr.*, on the brief, and *Mr. Murphy* orally), for the defendant.

JOHNSON, J. The defendant, Acorn Investment Company, Inc. (Acorn), appeals an order of the Superior Court (*Barry*, J.) granting Pamela Major, the plaintiff, pre-judgment interest on an arbitration award under RSA 524:1-b. Acorn argues that *Leach v. O'Neill*, 132 N.H. 665, 568 A.2d 1189 (1990) bars the application of RSA 524:1-b to arbitration awards such as the one in this case. We agree and, therefore, reverse and remand.

Major was injured on March 22, 1985, when a taxicab operated by one of Acorn's employees struck the car she was driving. She commenced a negligence action in superior court by writ of summons dated October 4, 1985. After conducting discovery, the parties agreed in December 1989 to submit the matter to binding arbitration before Alternative Dispute Resolution, Inc. An arbitration hearing was held on January 12, 1990, on which date the parties also signed an arbitration agreement. The arbitration agreement was never filed with the superior court pursuant to RSA 542:3-a, which provides that:

"A stipulation filed prior to trial in any civil case pending in the superior court, in which all of the parties or their attor-

neys agree to submit the case to arbitration, shall, upon approval of the court, be considered an agreement in writing to submit to arbitration, within the scope of RSA 542:1. Filing of the stipulation shall stay the trial of the suit until arbitration has been had in accordance with the terms of the stipulation. Arbitration proceedings shall be governed by applicable provisions of this chapter except as otherwise provided in the stipulation. . . ."

Subsequent to the hearing, but prior to the decision of the arbitrator, the parties discussed pre-judgment interest, and the plaintiff brought the subject to the attention of the arbitrator. The arbitrator's decision, dated January 25, 1990, awarded the plaintiff $30,000. In his decision, the arbitrator stated: "This award does not include any calculations for interest which may or may not be applicable, and, if not applicable, I do not award."

Thereafter, the plaintiff requested Acorn to pay $12,691.68 in interest in addition to the $30,000 award. Acorn paid the amount of the award, but refused to pay the interest. Instead, Acorn filed in the superior court a "Motion to Enforce Settlement Agreement," requesting, *inter alia*, that the court order the plaintiff to execute a general release of her claim against Acorn. The plaintiff objected and filed a cross-motion, asking the court to enter the arbitrator's award as a judgment and to award pre-judgment interest pursuant to RSA 524:1-b. The court ruled that the plaintiff was entitled to such interest, and denied Acorn's subsequent motion for reconsideration.

■ Acorn appeals the court's order, arguing that RSA 524:1-b is not applicable to arbitration awards, and that the court misconstrued *Leach v. O'Neill*, 132 N.H. 665, 568 A.2d 1189 in reaching its decision.

RSA 524:1-b provides that:

"In all other civil proceedings at law or in equity in which a verdict is rendered or a finding is made for pecuniary damages to any party . . . there shall be added forthwith by the clerk of court to the amount of damages interest thereon from the date of the writ . . . ."

In *Leach*, we held that "an arbitration proceeding pursuant to RSA chapter 542 is not a 'civil proceeding at law or in equity' within the meaning of RSA 524:1-b." 132 N.H. at 668, 568 A.2d at 1191 (quoting RSA 524:1-b). Therefore, we concluded that RSA 524:1-b is not appli-

cable to RSA chapter 542 arbitration proceedings. *See id.* Thus, interest in such proceedings may not be granted pursuant to RSA 524:1-b.

The plaintiff attempts to distinguish *Leach* in two ways. First, she argues that the arbitration in this case was not pursuant to RSA chapter 542. In *Leach*, the parties to an existing superior court action filed a stipulation agreeing to arbitrate pursuant to RSA 542:3-a, set forth above. *Id.* at 666, 568 A.2d at 1190. Major argues that she and Acorn did not follow that procedure and, hence, did not agree to arbitrate pursuant to RSA chapter 542.

RSA 542:1 states:

> "[A]n agreement in writing to submit to arbitration any controversy existing at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

■ Although the parties did not file their arbitration agreement pursuant to RSA 542:3-a, they clearly entered into a private arbitration agreement that was valid, irrevocable, and enforceable. The failure to file the agreement with the superior court did not void the agreement; it merely denied the parties an automatic stay of the superior court proceedings. Once the parties had agreed to binding arbitration, the award could be confirmed under section 8 and a judgment could be awarded pursuant to section 9 of RSA chapter 542. This chapter sets out the procedure by which private arbitration agreements generally may be enforced. We conclude that where there is an agreement which meets the standards of RSA 542:1, as does the agreement here, the proceeding is "an arbitration proceeding pursuant to RSA chapter 542." *See Leach*, 132 N.H. at 668, 568 A.2d at 1191.

■ Second, Major points to our discussion in *Leach* of an alternative ground for our holding, and argues that this alternative ground is not present in the case at bar. In *Leach*, it was unclear whether the arbitrator's award included interest. *Id.* Here, Major asserts that the arbitrator explicitly excluded interest from the award. This assertion is irrelevant to the applicability of *Leach*'s construction of RSA 524:1-b to the present case. Because RSA 524:1-b does not apply to RSA chapter 542 arbitration proceedings, we hold that the trial court erred in ruling that Major was entitled *by statute* to interest from the date of the writ.

■ Finally, Major argues that Acorn impliedly agreed to pay interest on any award granted by the arbitrator, giving her a contractual right to interest. Because Major raised this issue in her "Objection to Motion to Enforce Settlement Agreement and Cross-Motion to Enter Judgment," and because the trial court did not make unambiguous findings sufficient for us to rule on this issue, we remand to the superior court to determine whether Major has any contractual right to interest from the date of the writ.

■ In conclusion, we note that where parties agree to arbitrate a dispute, they may further agree, as part of the arbitration agreement, on whether interest, and at what rate, will or will not be added to the arbitrator's award. If the parties so decide, they may agree as to whether interest shall run from the date of the injury, the date the writ was filed, the date of the arbitrator's award, the date a judgment is entered or any other date selected by the parties. If this agreement is made prior to arbitration, it will be enforceable as "any contract." *See* RSA 542:1.

*Reversed and remanded.*

All concurred.