312 P.2d 803

**Dora Chavez DE GRIEGO, a widow, Plaintiff-Appellee,**

**v.**

**ALLISON & HANEY, a co-partnership and the City of Albuquerque, a municipal corporation, Defendant-Appellant.**
**No. 6213.**

Supreme Court of New Mexico.
June 27, 1957.

44

Simms, Modrall, Seymour, Sperling & Roehl, Vance Mauney, Albuquerque, for appellants.

Gilberto Espinosa, Robert Hoath LaFollette, Albuquerque, for appellee.

COMPTON, Justice.

Negligence in the construction of a storm sewer and sewer lift station is alleged as a basis of this action. The appellant, Allison & Haney, denied the acts of negligence and asserted various affirmative defenses. The City of Albuquerque likewise denied any act of negligence and cross-claimed against appellant for any damages which might be recovered against it. Following a hearing before the court, the cause was dismissed as to the City. Judgment was entered against Allison & Haney and this appeal is prosecuted.

The pertinent finding reads:

"That as a result of the failure of the defendant to use ordinary or due care in the construction of the storm sewer and sanitary lift station the plaintiff's house was flooded in August 1953 and damaged to the extent of $750.00 by the water."

Appellant vigorously argues that the finding as to negligence has no substantial support in the evidence. We will review the evidence briefly. Under a contract with the City, appellant constructed a storm sewer and enlarged a sewer lift station. The storm sewer was constructed in Williams Street between Pacific Avenue and Truman Street during June and July 1953. The sewer lift station is near the intersection of Commercial and Cromwell Streets and its capacity was enlarged during July, August and September of the same year.

Appellee's house is at 923 Williams Street, near the intersection with Cromwell, in which she had lived for many years. A somewhat heavy rain in August 1953 caused a large break in the pavement at the corner of Cromwell and Commercial Streets where the sewer lift had been installed, from which water ran onto appellee's premises, filling her house with some 2 to 3 feet of water. Other houses in the area were also flooded. That appellee sustained damages, is not questioned. Immediately following the break, and for several months thereafter, workmen were seen repairing the break. Appellant's superintendent, a Mr. Veater, was there. The day following the break appellee talked to him, and we quote a part of that conversation:

"Q. You heard Mr., You know Mr. Veater, the man who testified here? A. Yes.

\*   \*   \*   \*   \*   \*

"Q. *How* did you first complain to about this? A. The flood was that night, you know, it happened that day before it started about seven, and the next day in the morning they were working on that sewer. He was there and I went over there and told him and he came with me to the house, in the house and he saw that it was all wet, you know, and he told me that he was going to see the company, that they were responsible, and what he says, but I can help you right now, I will send you some sand and gravel, and he did, he sent me ten trucks of gravel.

"Q. Who did he say he was sending that gravel for, Haney Construction Company? A. Yes."

Appellee never actually examined the structure for imperfections in workmanship. The evidence as to negligence is largely circumstantial, but when the evidence is viewed in an aspect most favorable to appellee, it is deemed substantial; the finding should not be disturbed on appeal.

Banes Agency v. Chino, 60 N.M. 297, 291 P.2d 328; Seismograph Service Corp. v. Bureau of Revenue, 61 N.M. 16, 293 P.2d 977.

The further point is made that the contract had been completed and the installations had been accepted by the City; hence, appellant's liability had thus terminated. The answer to this question depends on various considerations. Of course had the work been completed with proper care and skill, its liability then ceased, but in the light of the superintendent's activity, that position is difficult to understand. His presence on the scene and his admissions point up the fact that the contract had not been so completed and accepted by the City. Clearly, the trial judge reached this view.

We think the text writer at 63 C.J.S. Municipal Corporations § 1259, expressed the applicable rule:

"A contractor employed by a municipal corporation to make a public improvement as authorized by statute and performing the work with proper care and skill is not liable for damages resulting to abutting property therefrom; but. he will be liable for negligence in the performance of the work, although there is no express provision in the contract imposing such liability. It is no defense that he followed the directions of the city engineer, and he will be liable for exemplary damages for injury to property, if done recklessly and wantonly, and without regard to the rights of the owner. * * *"

The judgment will be affirmed, and It Is So Ordered.

LUJAN, C. J., and SADLER, McGHEE and KIKER, JJ., concur.